IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CENTER FOR FOOD SAFETY, ET AL., | No. C 11-00831 JSW |
| Plaintiffs, | **ORDER GRANTING IN PART AND DENYING IN PART FEDERAL DEFENDANTS' MOTION TO DISMISS FOR IMPROPER VENUE OR, IN THE ALTERNATIVE, TO TRANSFER VENUE; ORDER OF TRANSFER** |
| v. | |
| THOMAS J. VILSACK, ET AL., | |
| Defendants. | |

Now before the Court is the motion to dismiss for improper venue, or, in the alternative, to transfer venue filed by Federal Defendants (Doc. no. 23.) The Court finds that this matter is appropriate for disposition without oral argument. Civ. L.R. 7-1(b). Having reviewed the parties' papers and considered the relevant legal authority, and good cause appearing, the Court GRANTS Federal Defendants' motion to transfer venue and DENIES the motion to dismiss.

## BACKGROUND

Plaintiffs filed the above-captioned action on February 23, 2011, challenging the February 4, 2011, interim decision by Animal and Plant Health Inspection Service ("APHIS"), an agency of the United States Department of Agriculture ("USDA") (collectively, "Federal Defendants"), partially deregulating Roundup Ready sugar beets ("RRSB") and issuing permits for RRSB seed crop pursuant to 7 C.F.R. Part 340. (Compl. ¶ 1.) RRSB is a genetically engineered variety of sugar beet that is able to tolerate the chemical glyphosate, the active ingredient in the herbicide Roundup. RRSB is owned and licensed by Monsanto Company ("Monsanto"). In connection with the partial deregulation, APHIS approved a final Environmental Assessment ("EA") and a Finding of No Significant Impact ("FONSI"). *See*

http://www.aphis.usda.gov/biotechnology/sugarbeet_documents.shtml. Plaintiffs allege that Federal Defendants issued the Final EA and partial deregulation decision in violation of the National Environmental Policy Act ("NEPA"), the Plant Protection Act ("PPA"), the 2008 Farm Bill, and the Administrative Procedure Act ("APA"). Monsanto has filed a motion to intervene which is currently pending in this action.

The parties have litigated prior agency decisions concerning RRSB. On January 23, 2008, Plaintiffs filed an action challenging the decision by APHIS in 2008 to fully deregulate RRSB seed and root crop, *Center for Food Safety v. Vilsack*, Case No. 08-00484 ("*Sugar Beets I*"). By order entered August 13, 2010, this Court partially vacated Federal Defendants' deregulation decision based on APHIS's failure to prepare an Environmental Impact Statement ("EIS"). The appeal of that decision by the Intervenor-Defendants in that action is pending before the Ninth Circuit. Plaintiffs have filed a motion to modify the protective order in that action, which has not yet been fully briefed and remains pending.

On September 9, 2010, Plaintiffs filed a second action against Federal Defendants challenging the decision by APHIS in September 2010 to issue permits to four seed companies to plant RRSB stecklings, *Center for Food Safety v. Vilsack, et al.*, Case No. 10-4038 JSW (*Sugar Beets II*). That case was randomly reassigned to this Court, which had previously denied Plaintiffs' motion to relate *Sugar Beets I* to *Sugar Beets II*. Following an evidentiary hearing on Plaintiffs' motion for preliminary injunction, the Court issued a preliminary injunction. On appeal by Federal Defendants and Intervenor-Defendants, the Ninth Circuit vacated the preliminary injunction decision and remanded for further proceedings. *Center for Food Safety v. Vilsack*, --- F.3d ----, 2011 WL 676187 (9th Cir. Feb. 25, 2011). The four permits at issue in *Sugar Beets II* were set to expire on February 28, 2011. Federal Defendants have filed a motion to dismiss the *Sugar Beets II* action as moot, which has not yet been fully briefed and remains pending.

On February 7, 2011, a group of sugar beet growers, processors, seed producers and trade associations, including three Intervenor-Defendants in the *Sugar Beets II* action, filed a declaratory relief action in the District Court for the District of Columbia, *Grant v. Vilsack*, No.

2

11-308 JDB (D.D.C., complaint filed Feb. 7, 2011). The *Grant* action challenges the conditions on RRSB root and seed crop production activities imposed by the February 4, 2011 decision by APHIS and, in the alternative, seeks a declaratory judgment that the EA and FONSI comply with NEPA. *Grant* names Center for Food Safety and Sierra Club as non-governmental defendants because their "past actions and threats of further [legal] action" allegedly present "a significant threat to our nation's sugar supply in the 2011 crop year." (*Grant*, Compl. ¶ 52.) The *Grant* complaint further alleges that a substantial controversy exists because the "Non-Governmental Defendants have indicated that they intend to seek a judicial order halting Plaintiffs' conduct and/or destroying Plaintiffs' property." (*Id.* ¶ 53.)

Prior to filing this action and after *Grant* was filed in the District of Columbia, Plaintiffs sought leave to amend the complaint in the earlier-filed action, *Sugar Beets II*. By order dated February 18, 2011, the Court denied Plaintiffs' motion for leave to amend the complaint in *Sugar Beets II*. On denial of Plaintiffs' motion for leave to amend, the Court determined that the interest of judicial economy likely would be better served by presenting Plaintiffs' request for injunctive relief in *Grant* rather than in this Court because the February 4, 2011, interim decision by APHIS is already the subject of the *Grant* litigation. The Court subsequently denied Plaintiffs' motion to relate *Sugar Beets II* to the above-captioned action by order dated February 25, 2011. This action was assigned initially to a Magistrate Judge, then randomly reassigned to this Court upon Federal Defendants' declination to proceed before a Magistrate Judge. By order dated March 3, 2011, the Court set an expedited briefing schedule on the instant motion to dismiss or transfer venue.

**ANALYSIS**

**I.  Standing**

Plaintiffs assert that venue is proper in this district because Plaintiff Sierra Club resides in San Francisco, California. (Compl. ¶ 10; Pls' Opp. at 6.) Federal Defendants seek dismissal of this action for improper venue pursuant to Federal Rule of Civil Procedure 12(b)(3) and 28 U.S.C. § 1406(a) on the grounds that Plaintiff Sierra Club lacks standing to challenge the partial deregulation decision by APHIS and should be dismissed from this action. On a motion raised

under Rule 12(b)(3), "the pleadings need not be accepted as true, and the court may consider facts outside of the pleadings." *Murphy v. Schneider National, Inc.*, 362 F.3d 1133, 1137 (9th Cir. 2004). However, the court must draw all reasonable inferences in favor of the non-moving party and resolve all factual conflicts in favor of the non-moving party. *Id.* at 1138.

Drawing all reasonable inferences in favor of Plaintiffs, the Court determines for the purposes of the Rule 12(b)(3) motion that Plaintiff Sierra Club has demonstrated that it has sufficiently alleged that (1) it has suffered an "injury in fact" that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision. *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180-81 (2000) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)).

To show a cognizable injury in fact, Plaintiffs must demonstrate that (1) APHIS violated certain procedural rules; (2) these rules protect Plaintiffs' concrete interests; and (3) it is reasonably probable that the challenged action will threaten their concrete interests. *Center for Food Safety v. Vilsack*, --- F.3d ----, 2011 WL 676187 at *4 (9th Cir. Feb. 25, 2011).

First, by alleging that APHIS violated NEPA in issuing its partial deregulation decision, Plaintiffs sufficiently allege that their "'asserted injury is that environmental consequences might be overlooked' as a result of deficiencies in the government's analysis under environmental statutes." *Citizens for Better Forestry v. United States Dept. of Agriculture*, 341 F.3d 961, 971-72 (9th Cir. 2003) (quoting *Salmon River Concerned Citizens v. Robertson*, 32 F.3d 1346, 1355 (9th Cir. 1994)).

Second, Plaintiffs sufficiently demonstrate a concrete injury. In NEPA cases, the concrete injury test requires that "environmental plaintiffs must allege that they will suffer harm by virtue of their geographic proximity to and use of areas that will be affected by the [agency's] policy." *Citizens for Better Forestry*, 341 F.3d at 971 (quotations omitted). Federal Defendants contend that Plaintiff Sierra Club lacks standing for failing to show "a geographic nexus between the individual asserting the claim and the location suffering an environmental

impact." *Id.* "'It is common ground that ... [an] organization can assert the standing of its members.' But the organization asserting standing must provide 'specific allegations establishing that at least one identified member [has] suffered or would suffer harm,' and 'generalized harm . . . will not alone support standing." *Western Watersheds Project v. Kraayenbrink*, --- F.3d ----, 2011 WL 149363, *7 (9th Cir. Jan. 19, 2011) (quoting *Summers v. Earth Island Institute*, 129 S.Ct. 1142, 1149, 1151 (2009)).

To establish concrete injury here, Plaintiff Sierra Club has offered the declarations of two of its members, B. Macdonald and E. Martenson, that were submitted previously in support of a motion for summary judgment in the *Sugar Beets I* action. (Declaration of Paige Tomaselli ISO Pls.' Opp., Exs. 2 (Macdonald Decl.) and 3 (Martenson Decl.).) Ms. Martenson states that she has grown organic produce, including organic table beets and chard, that she is adversely affected by the lack of information available about the environmental effects of RRSB such as genetic contamination of closely related beet varieties, and that RRSB poses a threat to her organic food diet and may eliminate her choice to grow, buy, and eat organic table beets and chard. (Martenson Decl. ¶ 6.) Mr. Macdonald states that he has grown organic table beets and chard in a community garden for personal consumption and that he purchases organic foods from local food stores. (Macdonald Decl. ¶¶ 5, 6.) Both members state that they eat products containing refined sugar and that they would be unable to choose products made without sugar derived from genetically engineered sugar beets as the sugar beet industry converts to using genetically engineered sugar beets. Recognizing that these declarations were filed over two years ago and that the expedited briefing schedule set by the Court makes it impracticable for the parties to submit more recent statements addressing injury, the Court looks to this evidence for the limited purpose of adjudicating Federal Defendants' Rule 12(b)(3) motion.

Federal Defendants do not contend that any of these alleged injuries have been remedied since the declarants submitted their statements to the Court. *Cf. Summers*, 129 S.Ct. at 1149 (finding that threatened injury had been remedied and was no longer at issue). Rather, Federal Defendants contend that the Sierra Club members have failed to demonstrate any geographical nexus with the location where the RRSB production will occur. With respect to the alleged

environmental effects of RRSB such as transgenic contamination or cross-pollination of her own organically grown vegetables, these declarations alone fail to establish sufficient geographical proximity of declarants' gardens in Napa and Caspar, California to the RRSB seed and root crops being planted under the interim APHIS decision at issue here. With respect to Mr. Macdonald and Ms. Martenson's ability to purchase non-genetically engineered produce and products made without sugar derived from genetically engineered sugar beets, however, such injury does not appear to be limited to a specific geographic region in the United States. Drawing all reasonable inferences in favor of Plaintiffs, the Court concludes that the alleged effect of partial deregulation of RRSB on the ability to buy non-genetically engineered produce and food products containing sugar that is not made from genetically engineered sugar beets is sufficient to state a concrete injury at this juncture.

Federal Defendants further contend that Plaintiff Sierra Club fails to meet the last standing requirement that "it is reasonably probable that the challenged action will threaten [its] concrete interests." *See Citizens for Better Forestry*, 341 F.3d at 969-70; *see also City of Sausalito v. O'Neill*, 386 F.3d 1186, 1197 (9th Cir. 2004). Federal Defendants have demonstrated that APHIS's interim decision requires mandatory conditions for root and seed crop planting, including geographical limitations on where RRSB may be planted. (Mot. at 5.) Nevertheless, it is reasonably probable that there could be some cross-pollination of non-genetically engineered organic or conventional foods with the RRSB root crops that would be permitted to grow in the states of Arizona, Colorado, Idaho, Michigan, Minnesota, Montana, Nebraska, North Dakota, Oregon, Washington, and Wyoming upon future issuance of permits. (EA at 63.) Furthermore, Federal Defendants represent that the Biotechnology Regulatory Services ("BRS") agency has already issued five permits to authorize seed crop planting between February 22 and 25, 2011 in seven of those states. (Declaration of Michael Gregoire ISO Fed. Defs.' Mot. to Dismiss or Transfer Venue ¶ 9.) Drawing all reasonable inferences in favor of Plaintiffs, Plaintiff Sierra Club has sufficiently alleged an injury in fact for purposes of this Rule 12(b)(3) motion.

6

1    "Once a plaintiff has established an injury in fact under NEPA, the causation and
2    redressability requirements are relaxed." *Center for Food Safety v. Vilsack*, --- F.3d ----, 2011
3    WL 676187 at *4 (9th Cir. Feb. 25, 2011) (citing *Citizens for Better Forestry*, 341 F.3d at 975).
4    Causation and redressability are satisfied here where Plaintiffs allege that an environmental
5    impact statement would address Plaintiffs' injuries. *Id*.

6    Having determined that Plaintiff Sierra Club has demonstrated standing to bring this
7    action under NEPA, the Court finds that venue is proper in this district and DENIES Federal
8    Defendants' motion to dismiss for improper venue.

**II.    Motion to Transfer**

In the alternative, Federal Governments seek transfer of this action to the District Court for the District of Columbia where the *Grant* action is currently pending. Pursuant to 28 U.S.C. § 1404(a), a district court may transfer a civil action to any district where the case could have been filed originally for the convenience of the parties and witnesses and in the interest of justice.

**A.    First to File Doctrine**

Federal Defendants do not seek dismissal or transfer on the basis of the "first to file" doctrine. Under this principle of federal comity, a district court "has discretion to transfer, stay, or dismiss" an action that involves the same parties and issues as an action already pending in another federal court. *Cedars-Sinai Medical Ctr. v. Shalala*, 125 F.3d 765, 769 (9th Cir. 1997). "The first-to-file rule was developed to 'serve the purpose of promoting efficiency well and should not be disregarded lightly.'" *Alltrade, Inc. v. Uniweld Products, Inc*., 946 F.2d 622, 625 (9th Cir. 1991) (quoting *Church of Scientology v. United States Dept. of the Army*, 611 F.2d 738, 750 (9th Cir. 1979)). "While no precise rule has evolved, the general principle is to avoid duplicative litigation," *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976), and to promote judicial efficiency. *See Church of Scientology v. United States Dept. of the Army*, 611 F.2d 738, 750 (9th Cir. 1979). Federal Defendants rest on their arguments seeking dismissal under Section 1406(a) or transfer under Section 1404(a) and do not seek relief under the first to file doctrine. (Reply at 12-13.) The Court therefore declines to

7

address any argument as to whether this action should be transferred, stayed or dismissed pursuant to the "first to file" doctrine.

Plaintiffs also contend that the "first to file" rule should not control here, except to the extent that the forum non conveniens arguments should be addressed to the court in the first-filed action. *See Pacesetter Systems, Inc. v. Medtronic, Inc.*, 678 F.2d 93, 96 (9th Cir. 1982). The Court takes judicial notice that Plaintiffs filed a motion to transfer in the *Grant* action on March 8, 2011, just prior to filing their opposition to Federal Defendants' motion to dismiss or transfer here. Plaintiffs also filed a motion to expedite briefing on their motion to transfer in the District of Columbia, which the District Court granted on March 9, 2011. Under normal circumstances, the court in the second-filed action would defer to the court in the first-filed action to decide the appropriate forum. *Id*. The filing of this case, however, arises from a history of litigation that is not normally present when two proceedings involve the same parties and issues. As a matter of comity, the Court recognizes that the issue of forum non conveniens has been brought before the District of Columbia by Plaintiffs, who appear as Non-Governmental Defendants in the *Grant* action. Because Plaintiffs did not file their motion to transfer in *Grant* until after Federal Defendants filed their motion to dismiss or transfer, which is now fully briefed and submitted before this Court, and because this Court is more familiar with the history of the *Sugar Beets I* and *II* litigation which is at issue in the forum non conveniens arguments, the Court proceeds with Federal Defendants' motion to transfer venue.

**B.  Convenience Considerations on Motion to Transfer Venue**

A district court has discretion "to adjudicate a motion for transfer according to an 'individualized, case-by-case consideration of convenience and fairness.'" *Stewart Org. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (quoting *Van Dusen v. Barrack*, 376 U.S. 612, 622 (1964)). On the Federal Defendants' motion to transfer under Section 1404, the Court must make the following two findings: (1) that the transferee court is "one where the action might have been brought," and (2) "that the convenience of the parties and witnesses in the interest of justice favor transfer." *Hatch v. Reliance Ins. Co.*, 758 F.2d 409, 414 (9th Cir. 1985) (internal quotation marks omitted). Plaintiffs do not dispute that this action could have been brought in

8

the District of Columbia but contend that considerations of convenience and the interests of justice favor adjudication in this district.

A motion to transfer venue under § 1404(a) requires the court to weigh multiple factors in its determination of whether transfer is appropriate in a particular case. The court considers the following convenience factors: (1) plaintiff's choice of forum; (2) convenience of the parties and witnesses; (3) ease of access to sources of proof; (4) local interest in the controversy; (5) familiarity of each forum with the applicable law; and (6) relative congestion in each forum. *See Gulf Oil Co. v. Gilbert*, 330 U.S. 501, 508-09 (1947); *Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir. 1986).

In addition to these convenience factors, the Court considers whether transferring the action would serve the interests of justice. *See Commodity Futures Trading Comm'n v. Savage*, 611 F.2d 270, 279 (9th Cir. 1979); *Pratt v. Rowland*, 769 F. Supp. 1128, 1133 (N.D. Cal. 1991) (holding that the interests of justice "may be decisive in ruling on a transfer motion"). The burden is on the moving party to demonstrate that the action should be transferred. *Commodity Futures Trading Commission v. Savage*, 611 F.2d 270, 279 (9th Cir. 1979).

### 1. Plaintiff's Choice of Forum is Entitled to Minimal Deference.

Typically, a court should give a plaintiff's choice of forum great deference unless the defendant can show that other factors of convenience clearly outweigh the plaintiff's choice of forum. *See Decker Coal Co.*, 805 F.2d at 843. However, a plaintiff's choice of forum is afforded less deference "[i]f the operative facts have not occurred within the forum of original selection and that forum has no particular interest in the parties or the subject matter." *Pac. Car & Foundry v. Pence*, 403 F.2d 949, 954 (9th Cir. 1968). Here, the operative facts giving rise to APHIS's partial deregulation decision did not occur in this district. Further, Federal Defendants have demonstrated that the interim decision does not allow RRSB to be grown in California, giving this district no particular interest in this litigation. (EA at 68.)

9

### 2. Convenience to Parties and Witnesses and Access to Evidence Are Neutral Factors.

In addition to considering a plaintiff's choice of forum, courts take into account the relative convenience for all parties and witnesses. *See Decker Coal*, 805 F.2d at 843 (citing *Gulf Oil*, 330 U.S. at 508). As the moving party, Federal Defendants are "obligated to identify the key witnesses to be called and to present a generalized statement of what their testimony would include." *Florens Containers v. Cho Yang Shipping*, 245 F. Supp. 2d 1086, 1093 (N.D. Cal. 2002). Plaintiffs do not dispute that Secretary Vilsack and the APHIS employees who prepared the challenged EA and FONSI reside near the District of Columbia. Plaintiffs argue that agency officials are unlikely to be deposed where the merits are based on the administrative record. Plaintiffs further argue that other than the trade associations that reside in the District of Columbia, most of the plaintiffs in *Grant* (that is, the sugarbeet farmers and processors and sugarbeet seed producers) do not reside in the District of Columbia, though none reside in California either. Plaintiffs point out that even though Center for Food Safety is headquartered in Washington, D.C. and Sierra Club has a legislative office there, several of their members who previously have provided declarations reside in California or Oregon.

"Importantly, while the convenience of party witnesses is a factor to be considered, the convenience of non-party witnesses is the more important factor." *Saleh v. Titan Corp.*, 361 F. Supp. 2d 1152, 1160 (S.D. Cal. 2005) (quoting *Aquatic Amusement Assocs. v. Walt Disney World Co.*, 734 F. Supp. 54, 57 (N.D. N.Y. 1990)) (internal quotation marks omitted). The parties have not identified at this point non-party witnesses who are likely to testify. Therefore, convenience to parties or witnesses bears little weight in the forum non conveniens analysis here.

With respect to access to documentary evidence, Plaintiffs point out that the administrative record can be made available anywhere by CD-ROM. This factor is neutral in the forum non conveniens analysis.

### 4. District of Columbia Has a Stronger Local Interest in this Litigation.

Because APHIS's administrative process occurred in the District of Columbia and Federal Defendants reside there, the District of Columbia has a stronger local interest than this district in adjudicating this action challenging the interim agency decision. This district does not have a particular interest in the RRSB partial deregulation because the interim decision does not allow RRSB seed and root crop to be grown in California. (EA at 68 ("Planting of H7-1 sugar beets is not allowed in the state of California").)

### 5. Familiarity with Applicable Law

The Northern District of California and the District of Columbia are equally familiar with Plaintiffs' claims under NEPA and other challenges to the interim decision. *See Allstar Mktg. Group, LLC v. Your Store Online, Inc.*, 666 F. Supp. 2d 1109, 1133 (C.D. Cal. 2009) (holding that federal districts are "equally capable of applying federal law"). This factor is therefore neutral.

### 6. This District and the District of Columbia Have Competing Levels of Docket Congestion.

The relative docket congestion of the competing forums is also relevant to the Court's decision on whether to transfer. *See Decker Coal*, 805 F.2d at 843. This factor examines "whether a trial may be speedier in another court because of its less crowded docket." *Gates Learjet*, 743 F.2d at 1337. To measure congestion, courts compare the two fora's "median time from filing to disposition or trial." *Costco Wholesale Corp. v. Liberty Mutual Ins. Co.*, 472 F. Supp. 2d 1183-96 (S.D. Cal. 2007). In the Northern District of California, the average period between filing and disposition in civil cases is 9.8 months, and the average period between filing and trial is 21.5 months. *See* Judicial Caseload Profile, available at http://www.uscourts.gov/Statistics/FederalCourtManagementStatistics.aspx (last viewed March 16, 2011). By comparison, in the District of Columbia, the average period between filing and disposition is less than this district, 7.1 months, but the average period between filing and trial is nearly double, 40.1 months. (*Id.*) Based on the significant difference in the time to trial, the Northern District of California is less congested than the District of Columbia, but the District

11

of Columbia has a faster time to disposition. The Court notes that Plaintiffs' challenges to APHIS's interim decision would likely be decided on motions and would not likely go to trial, which would thereby benefit from the faster time from filing to disposition in the District of Columbia. Nevertheless, the Court considers the time from filing to trial as a factor in the forum non conveniens analysis.

As set forth in the analysis above, the only convenience factors that favor retaining venue in this district is some deference to Plaintiffs' original choice of forum and shorter time to trial. On the other hand, Federal Defendants have demonstrated that the District of Columbia has a stronger local interest in this litigation and slightly faster time from filing to disposition, which is the more relevant indicator of court congestion for this action. On balance, the Court finds that the convenience considerations weighs only slightly in favor of transfer. The parties agree that the "interests of justice" consideration is decisive here.

### C.  Interests of Justice

"In determining whether to transfer a case . . . the district court must determine whether the 'interests of justice' dictate such a transfer." *Sherar v. Harless*, 561 F.2d 791, 794 (9th Cir. 1977). The "interests of justice" refer to "those public-interest factors of systemic integrity and fairness." *Stewart*, 487 U.S. at 30. These interests include "whether efficient and expeditious administration of justice would be furthered." *Sherar*, 561 F.2d at 794.

Federal Defendants contend that judicial economy favors transfer to the District of Columbia, where several sugar beet farmers, processors and seed producers have filed the *Grant* action challenging APHIS's interim decision. On the other hand, Plaintiffs argue that this Court's experience in adjudicating the *Sugar Beets I* and *II* actions, as well as the pendency of the *Sugar Beets II* action, would promote judicial economy and consistency and would avoid duplicative litigation. Plaintiffs concede that the February 4, 2011, EA and FONSI challenged in this action are also at issue in the earlier-filed *Grant* action. (Opp. at 4.) The parties agree that such duplicative lawsuits unnecessarily waste judicial resources and create the risk of inconsistent rulings. Having carefully weighed the arguments, the Court concludes that transfer to the District of Columbia would better serve the interests of justice.

Plaintiffs rely on the Court's familiarity with the prior RRSB litigation to oppose Federal Defendants' motion to transfer. With respect to the federal statutes at issue in this action that were also at issue in *Sugar Beets I* and *II*, this Court and the District of Columbia are equally familiar with the applicable law, as discussed earlier. Plaintiffs suggest that this Court is more familiar also with the facts of this case because of its prior experience in adjudicating the *Sugar Beets I* and *II*. However, this action does not center on highly technical patent issues or other scientific evidence about the development of the genetically engineered crop that might benefit from the Court's familiarity with certain technology from prior litigation. Rather, this action challenges the adequacy of review by APHIS upon issuing its interim decision to allow partial deregulation of RRSB. While this Court is familiar with Plaintiffs' prior challenges to APHIS's earlier agency actions, the agency decisions at issue here and in *Grant* are based on an entirely different administrative record that has developed since the Court granted a preliminary injunction in *Sugar Beets II*. That record includes the Final EA, the FONSI, the Plant Pest Risk Assessment ("PPRA") and the Determination Decision on the Petition for Partial Deregulation, none of which have been subject to judicial review. (*See* Gregoire Decl. ¶ 8.)

Furthermore, the permits at issue in *Sugar Beets II* expired on February 28, 2011, whereas the permits for seed crop planting issued pursuant to the February 2011 partial deregulation decision were issued after this Court held an evidentiary hearing in *Sugar Beets II*. (*Id.* ¶ 9.) This Court has not reviewed the evidence related to the permits issued in February 2011 or other agency decisions at issue in this lawsuit. It is therefore unlikely that this Court's adjudication of Plaintiffs' challenges to the expired permits in *Sugar Beets II* would result in inconsistent decisions affecting the permits at issue in *Grant* or in this action.

Plaintiffs further argue that the parties in this action are identical to the parties who litigated *Sugar Beets I* and *II*. Plaintiffs fail to recognize, however, that the Court allowed the Intervenor-Defendants to intervene only in the adjudication of the remedies on Plaintiffs' motion for a preliminary injunction in *Sugar Beets II*, and did not permit those Intervenor-Defendants to address the merits of Plaintiffs' challenges to the prior agency decisions. (*See Sugar Beets II*, Order Regarding Pending Motions filed September 28, 2010.) In view of the

1 Ninth Circuit's recent ruling abandoning the "federal defendant rule" in *Wilderness Society v.*
2 *United States Forest Service*, 630 F.3d 1173 (9th Cir. 2011), Intervenor-Defendants may be
3 permitted to intervene on the merits of Plaintiffs' NEPA claims in this action. Furthermore,
4 three of the *Sugar Beets II* Intervenor-Defendants have filed challenges to APHIS's interim
5 decision in the *Grant* action. Intervenor-Defendants did not bring similar cross-claims for
6 declaratory relief in *Sugar Beets I* or *II*, and the Court has not considered any such claims which
7 are presently before the District Court in the *Grant* action.

8 Plaintiffs also contend that the *Sugar Beets II* Intervenor-Defendants filed the *Grant*
9 action in a race to the courthouse after Plaintiffs notified Intervenor-Defendants that they would
10 seek leave to amend the complaint in *Sugar Beets II*. This is not the first insinuation of forum
11 shopping raised by the parties. In light of the parties' statements to this Court during the course
12 of *Sugar Beets II* which anticipated the February 2011 interim decision by APHIS, as well as
13 the documented history of Intervenor-Defendants' petitions to APHIS seeking deregulation of
14 RRSB, the Court is not persuaded that Plaintiffs' attempt to meet and confer with Intervenor-
15 Defendants on amendment of their complaint in *Sugar Beets II* prompted an anticipatory suit.

16 The Court determines that transfer of this action to the District of Columbia, rather than
17 dismissal as a duplicative action, would avoid the unnecessary delay and cost of filing and
18 serving new pleadings to state Plaintiffs' claims for relief. The Court concludes that transfer of
19 this action to the District of Columbia to be adjudicated with the *Grant* action currently pending
20 before that Court would better serve the efficient and expeditious administration of justice by
21 having all challenges to the February 2011 interim decision decided by a single court. By
22 resulting in a single judicial review of the administrative record, transfer of this action will
23 avoid inconsistent judicial findings.

**CONCLUSION**

25 For the reasons set forth above, Federal Defendants' motion to dismiss for improper
26 venue is DENIED. Federal Defendants' motion to transfer venue to the United States District
27 Court for the District of Columbia is GRANTED.

28

14

The Clerk is directed to transfer the file to the District Court for the District of Columbia with a notice to consider whether this action is related to *Grant v. Vilsack*, No. 11-308 JDB (D.D.C., complaint filed February 7, 2011).

**IT IS SO ORDERED.**

Dated: March 17, 2011

JEFFREY S. WHITE
UNITED STATES DISTRICT JUDGE